UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRENDA G. SWAIN,<br><br>　　　　　　　Plaintiff,<br><br>　　v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>　　　　　　　Defendant. | No. 2:14-cv-1351-KJN<br><br><br>ORDER |

Plaintiff seeks judicial review of a final decision by the Commissioner of Social Security ("Commissioner") denying plaintiff's application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act").[1] In her motion for summary judgment, plaintiff principally contends that the Commissioner erred by finding that plaintiff was not disabled from June 7, 2004, plaintiff's alleged disability onset date, through December 31, 2009, plaintiff's date last insured. (ECF No. 14.) The Commissioner filed an opposition to plaintiff's motion and a cross-motion for summary judgment. (ECF No. 18.) No optional reply brief was filed by plaintiff.

---

[1] This action was initially referred to the undersigned pursuant to E.D. Cal. L.R. 302(c)(15), and both parties voluntarily consented to proceed before a United States Magistrate Judge for all purposes. (ECF Nos. 7, 9.)

1

For the reasons discussed below, the court DENIES plaintiff's motion for summary judgment, GRANTS the Commissioner's cross-motion for summary judgment, and enters judgment for the Commissioner.

I.  BACKGROUND

Plaintiff was born on June 29, 1964, has a high school education with special education classes, is able to communicate in English, and previously worked primarily as a lumber grader/laborer at a lumber mill.[2] (Administrative Transcript ("AT") 40, 55-56, 85, 112, 346.) On May 6, 2008, plaintiff applied for DIB, alleging that her disability began on June 7, 2004, and that she was disabled primarily due to a right elbow impairment, a learning disability, attention deficit hyperactivity disorder ("ADHD"), and diabetes. (AT 132, 290, 347.) After plaintiff's applications were denied initially and on reconsideration, plaintiff requested a hearing before an administrative law judge ("ALJ"), which took place on June 9, 2010, and at which plaintiff, represented by an attorney, and a vocational expert ("VE") testified. (AT 50-94, 177, 183.) In a decision dated August 18, 2010, the ALJ determined that plaintiff was not disabled during the relevant period. (AT 154-65.) Subsequently, plaintiff requested review of the ALJ's decision by the Appeals Council, which remanded the case for a new hearing and additional proceedings on January 20, 2012. (AT 173-75.) An additional hearing was conducted on September 17, 2012, at which plaintiff, represented by an attorney, and a VE testified. (AT 95-131.)

In a subsequent decision dated October 10, 2012, the ALJ again determined that plaintiff had not been under a disability, as defined in the Act, at any time from June 7, 2004, plaintiff's alleged disability onset date, through December 31, 2009, plaintiff's date last insured. (AT 29-42.) The ALJ's October 10, 2012 decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review on February 27, 2014. (AT 12-14.) Thereafter, upon receiving an extension of time to file a civil action from the Appeals Council (AT 1), plaintiff filed this action in federal district court on June 3, 2014, to obtain judicial review

---

[2] Because the parties are familiar with the factual background of this case, including plaintiff's medical and mental health history, the court does not exhaustively relate those facts in this order. The facts related to plaintiff's impairments and treatment will be addressed insofar as they are relevant to the issues presented by the parties' respective motions.

of the Commissioner's final decision.  (ECF No. 1.)

II.     ISSUES PRESENTED

On appeal, plaintiff has raised the sole issue of whether the ALJ improperly rejected plaintiff's testimony concerning her own symptoms and functional limitations.

III.    LEGAL STANDARD

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it.  Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999).  Substantial evidence is more than a mere scintilla, but less than a preponderance.  Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted).  It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).  "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities."  Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citation omitted).  "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation."  Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

IV.     DISCUSSION

A.     Summary of the ALJ's Findings

The ALJ evaluated plaintiff's entitlement to DIB pursuant to the Commissioner's standard five-step analytical framework.[3]  As an initial matter, the ALJ noted that plaintiff met the insured

---

[3] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program.  42 U.S.C. §§ 401 et seq.  Supplemental Security Income is paid to disabled persons with low income.  42 U.S.C. §§ 1382 et seq.  Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A).  A parallel five-step sequential evaluation governs eligibility for benefits under both programs.  See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987).  The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
>
> Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step

3

status requirements of the Act for purposes of DIB through December 31, 2009.  (AT 31.)  At the first step, the ALJ concluded that plaintiff had not engaged in substantial gainful activity between June 7, 2004, plaintiff's alleged disability onset date, and December 31, 2009, plaintiff's date last insured.  (Id.)  At step two, the ALJ found that plaintiff had the following severe impairments through the date last insured: right elbow pain, learning disability, ADHD, anxiety, and diabetes.  (Id.)  However, at step three, the ALJ determined that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 through the date last insured.  (Id.)

Before proceeding to step four, the ALJ assessed plaintiff's residual functional capacity ("RFC") as follows:

> After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she could stand/walk six hours in an eight hour workday and sit six hours in an eight hour workday, she could lift 25 pounds occasionally and 10 pounds frequently, and no repetitive pushing/pulling with right upper extremity, and no strenuous activities requiring the use of her right upper extremity. She has no limits with left upper extremity.  She could perform simple repetitive tasks and adapt to minimal changes in work environment.  She could interact with supervisor, coworkers, and the public.  She could concentrate on her regular simple type tasks, and perform simple one-two simple tasks.  [sic]

---

three.  If not, then a finding of not disabled is appropriate.

Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled.  If not, proceed to step four.

Step four:  Is the claimant capable of performing his past relevant work?  If so, the claimant is not disabled.  If not, proceed to step five.

Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  Bowen, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.

4

(AT 32.)

At step four, the ALJ found that plaintiff was unable to perform any past relevant work through the date last insured.  (AT 40.)  However, at step five, the ALJ determined, based on the VE's testimony, that, considering plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that plaintiff could have performed through the date last insured.  (AT 41.)

Accordingly, the ALJ concluded that plaintiff had not been under a disability, as defined in the Act, at any time from June 7, 2004, plaintiff's alleged disability onset date, through December 31, 2009, plaintiff's date last insured.  (AT 41.)

B. Plaintiff's Substantive Challenges to the Commissioner's Determinations

As noted above, plaintiff contends that the ALJ improperly rejected plaintiff's testimony concerning her own symptoms and functional limitations.

In Lingenfelter v. Astrue, 504 F.3d 1028 (9th Cir. 2007), the Ninth Circuit Court of Appeals summarized the ALJ's task with respect to assessing a claimant's credibility:

> To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis.  First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged.  The claimant, however, need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom.  Thus, the ALJ may not reject subjective symptom testimony . . . simply because there is no showing that the impairment can reasonably produce the degree of symptom alleged.
>
> Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so. . . .

Lingenfelter, 504 F.3d at 1035-36 (citations and quotation marks omitted).  "At the same time, the ALJ is not required to believe every allegation of disabling pain, or else disability benefits would be available for the asking...."  Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012).

"The ALJ must specifically identify what testimony is credible and what testimony undermines the claimant's complaints."  Valentine v. Comm'r of Soc. Sec. Admin., 574 F.3d 685,

5

693 (9th Cir. 2009) (quoting Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999)). In weighing a claimant's credibility, an ALJ may consider, among other things, the "'[claimant's] reputation for truthfulness, inconsistencies either in [claimant's] testimony or between [her] testimony and [her] conduct, [claimant's] daily activities, [her] work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [claimant] complains.'" Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002) (modification in original) (quoting Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997)). If the ALJ's credibility finding is supported by substantial evidence in the record, the court "may not engage in second-guessing." Id. at 959.

In this case, the ALJ provided several specific, clear, and convincing reasons for discounting plaintiff's testimony concerning the severity of her symptoms and functional limitations.

The ALJ properly relied on the medical opinions of the consultative examiners to find plaintiff not completely credible. (AT 33-35, 40.)[4]

On October 17, 2006, consultative examiner and clinical psychologist Dr. Mark Pierce performed a complete psychological evaluation of plaintiff, as well as intelligence, memory, and achievement testing. (AT 480.) Dr. Pierce diagnosed plaintiff with a learning disorder, borderline intellectual functioning, and methamphetamine abuse in sustained full remission. (AT 484.) He opined that plaintiff had adequate reasoning capacity, could complete simple and repetitive vocational skills, could remember and comply with simple one and two part instructions, could concentrate adequately for a regular work schedule for a full workweek, could adapt to minimal changes in a work environment, and could effectively work with others. (AT 485.)

On November 16, 2006, plaintiff was also examined by consultative examiner and orthopedic surgeon Dr. Nathan Pliam. (AT 486, 490.) After performing a comprehensive

---

[4] On appeal, plaintiff does not challenge the ALJ's assessment of the medical opinion evidence through any substantive briefing or argument. Thus, any such issue is waived. See Carmickle v. Comm'r, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008).

physical examination, including an examination of plaintiff's spine and all extremities, Dr. Pliam diagnosed plaintiff with right laterohumeral epicondylitis, also known as tennis elbow. (AT 490.) Dr. Pliam opined that plaintiff could lift 25 pounds occasionally and 10 pounds repetitively, and was precluded from repetitive forceful pushing and pulling, as well as strenuous activities, requiring the use of her right upper extremity. (Id.)

Thereafter, on August 16, 2008, plaintiff was examined by consultative examiner and internist Dr. Scott Gabler. (AT 611, 614.) Dr. Gabler described plaintiff as "a very well-appearing obese female who ambulates with no difficulty. She is able to sit comfortably throughout the examination, easily able to get on the examination table." (AT 612.) Her diabetes was well controlled with oral medication. (Id.) Plaintiff had a normal gait, no edema in the extremities, normal reflexes, normal sensation, normal motor strength and muscle bulk/tone in both elbows with no weakness or atrophy noted, preserved range of motion in the right elbow without crepitus, and no pain with palpation over the right elbow joint or forearm. (AT 613.) Dr. Gabler diagnosed plaintiff with right elbow pain, "currently without pain; however, it does become worse with increased use." (Id.) He declined to assess plaintiff's alleged ADHD. (AT 614.) Dr. Gabler opined that plaintiff could stand and walk for at least 6 hours in an 8-hour workday, could sit without restriction, did not require an assistive device, and had no further limitations. (Id.)

These medical opinions by specialists who personally examined plaintiff during the relevant period are consistent with the ALJ's RFC and also support the ALJ's credibility determination. To be sure, "after a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain." Burch, 400 F.3d at 680 (citing Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991)). However, while such lack of medical evidence cannot form the sole basis for discounting plaintiff's subjective symptom testimony, it is nevertheless a relevant factor for the ALJ to consider. Id. at 681. Thus, the ALJ properly considered any inconsistencies between plaintiff's testimony and the medical opinions discussed above.

7

The ALJ also rationally found that plaintiff's contention that her learning disability would preclude her from working was inconsistent with her work history. (AT 38.) Even though plaintiff was in special education classes in school, she was able to complete her job duties as a lumber grader, a semi-skilled job which involves making judgments and attaining precise standards, from 1993-2004, i.e., for 12 consecutive years. (AT 38, 85-86, 112, 348.) The ALJ reasoned that plaintiff's work history, as well as the fact that plaintiff's learning disability was present at approximately the same level of severity prior to the alleged onset date, strongly suggest that plaintiff's learning disability would not preclude her from working. (AT 38.)

Furthermore, the ALJ reasonably pointed to plaintiff's relatively routine and conservative treatment during the relevant period as a basis for discounting her testimony. (AT 39.) See Parra v. Astrue, 481 F.3d 742, 751 (9th Cir. 2007) ("We have previously indicated that evidence of conservative treatment is sufficient to discount a claimant's testimony regarding severity of an impairment"). As the ALJ explained by detailed reference to plaintiff's treatment records, plaintiff's physical and mental impairments were generally effectively controlled through medication, and her treatment consisted largely of office visits for routine complaints, check-ups, and medication refills. (AT 34-36, 39.) A condition that can be controlled or corrected by medication is not disabling for purposes of determining eligibility for benefits under the Act. See Warre v. Comm'r of Soc. Sec. Admin., 439 F.3d 1001, 1006 (9th Cir. 2006).

Finally, the ALJ properly found that plaintiff's activities were inconsistent with her allegations of disabling symptoms and limitations. (AT 38.) "While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting ... Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." Molina, 674 F.3d at 1112-13 (citations and quotation marks omitted); see also Burch v. Barnhart, 400 F.3d 676, 680 (9th Cir. 2005) (ALJ properly considered claimant's ability to care for her own needs, cook, clean, shop, interact with her nephew and boyfriend, and manage her finances and those of her nephew in the credibility

1  analysis); Morgan v. Comm'r of Soc. Sec., 169 F.3d 595, 600 (9th Cir. 1999) (ALJ's

2  determination regarding claimant's ability to "fix meals, do laundry, work in the yard, and

3  occasionally care for his friend's child" was a specific finding sufficient to discredit the

4  claimant's credibility).

5  　　　Here, as the ALJ observed, plaintiff completed a function report on October 10, 2006,

6  indicating that:

> she gets her kids ready for school, takes the kids to school, does household chores, picks kids up from school, and takes them to after school activities.  In addition, she prepares meals, does laundry, (she cannot lift heavy items), she drives and shops, she can pay bills, count change, and handle money.  She needs no help or encouragement to do these things.  She goes out several times a day by driving or being a passenger.  She socializes on the phone daily.  She attends school events.  She is able to handle stress and changes in routine.

12  (AT 37, 334-41.)  Plaintiff also informed Dr. Pierce on October 17, 2006, that she lived with her

13  family in a house; was able to dress and bathe herself; performed household chores; went

14  shopping; cooked; was able to drive and move about within the community alone; paid her own

15  bills and handled her own money; and got along "excellent" with family/relatives, friends,

16  neighbors, and others.  (AT 481.)  On May 29, 2008, plaintiff completed another function report,

17  reporting that:

> she had no problem taking care of her personal needs.  She prepares complete meals daily, she does laundry, household cleaning once a week.  She needs no help or encouragement to do these things.  She shops every other day.  Her hobbies include beading jewelry once a week, as well as "other stuff."  She socializes on the phone daily and she attends church and school events.  She can follow spoken one or two instructions. [sic] She handles changes in a routine very well.

23  (AT 37, 354-61.)  On August 16, 2008, plaintiff further told Dr. Gabler that she had three children

24  at home that she cared for without difficulty; that she was able to do all of her yard work and

25  housework without any problems; and that her hobby was fishing.  (AT 612.)  In light of the

26  activities discussed above, the ALJ rationally concluded that plaintiff was capable of at least a

27  reduced range of light work involving simple repetitive tasks.  (AT 32.)

28  ////

To be sure, the record may contain some contrary evidence, suggesting that plaintiff's activities were more limited. However, it is the function of the ALJ to resolve any ambiguities and inconsistencies, and the court finds the ALJ's assessment to be reasonable and supported by substantial evidence. See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) (affirming ALJ's credibility determination even where the claimant's testimony was somewhat equivocal about how regularly she was able to keep up with all of the activities and noting that the ALJ's interpretation "may not be the only reasonable one"). As the Ninth Circuit explained:

> It may well be that a different judge, evaluating the same evidence, would have found [the claimant's] allegations of disabling pain credible. But, as we reiterate in nearly every case where we are called upon to review a denial of benefits, we are not triers of fact. Credibility determinations are the province of the ALJ...Where, as here, the ALJ has made specific findings justifying a decision to disbelieve an allegation of excess pain, and those findings are supported by substantial evidence in the record, our role is not to second-guess that decision.

Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989).

In light of the above, the court concludes that the ALJ provided several specific, clear, and convincing reasons for discounting plaintiff's testimony of disabling symptoms and functional limitations beyond the limitations assessed in the ALJ's RFC.

V.   **CONCLUSION**

For the foregoing reasons, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 14) is denied.

2. The Commissioner's cross-motion for summary judgment (ECF No. 18) is granted.

3. Judgment is entered for the Commissioner.

4. The Clerk of Court shall close this case.

IT IS SO ORDERED.

Dated: July 20, 2015

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE